# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | |
|---|---|
| EVAN BAER, TERRY CAVANAUGH, MICHELLE PATRAW, CHENNETTA SCHOEFIELD, and TITO TORRES JR., on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>THE KROGER COMPANY,<br><br>Defendant. | Civil Case No.:<br><br>JUDGE: |

## CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiffs Evan Baer, Terry Cavanaugh, Michelle Patraw, Chennetta Schoefield, and Tito Torres Jr. ("Plaintiffs"), individually and on behalf of the proposed class defined below, bring this action against Defendant The Kroger Company ("Kroger"), and allege as follows:

### I. SUMMARY OF THE ACTION

1. This action stems from Kroger's failure to secure the sensitive personal information of its employees, former employees, and pharmacy customers. Kroger uses Accellion, a cloud solutions company, to collect and transfer personally identifiable information ("PII"). In December 2020 and January 2021, Accellion detected breaches of its electronic information systems that compromised millions of people's most sensitive information (the "Data Breach"). The PII of Kroger's customers and employees was stolen in the Data Breach. The stolen information includes names, Social Security numbers, email addresses, phone numbers, home addresses, dates of birth, information to process insurance claims, prescription

1

information such as prescription number, prescribing doctor, medication names and dates, medical history, information about clinical services, and, for affected employees, salary information such as net and gross pay and withholdings.

2. Plaintiffs have already experienced instances of fraud and identity theft following the Data Breach. Among other incidents, Plaintiffs have suffered fraudulent charges and have spent considerable time addressing the fallout from the Data Breach. And they have paid for data security measures such as a Virtual Private Network or more robust credit monitoring services than the service Kroger is currently offering.

3. Plaintiffs by this action seek compensatory damages together with injunctive relief to remediate Kroger's failure to secure their PII, and to provide credit monitoring, identity theft insurance, and credit repair services to protect the class of Data Breach victims from identity theft and fraud.

## II. PARTIES

4. Plaintiff Evan Baer is a citizen and resident of Jackson, Ohio. He is a Kroger customer and uses Kroger's pharmacy to fill his prescriptions. On March 11, 2021, Mr. Baer received a letter from Kroger informing him of the Data Breach and advising him to take protective measures. Since the Data Breach, Mr. Baer has learned of three fraudulent charges on his bank account made in different states. Mr. Baer purchased LifeLock identity theft protection and a Virtual Private Network (VPN) to attempt to secure his data. He has also canceled his credit card accounts and requested new credit cards due to the fraudulent charges. His medical and other sensitive personal information was compromised in the Data Breach.

5. Plaintiff Terry Cavanaugh is a citizen and resident of Latrobe, Pennsylvania. He is a customer of Fry's Grocery Store and Pharmacy (a Kroger Pharmacy) and has used Fry's to

fill his prescriptions since approximately October 2020. On March 18, 2021, Mr. Cavanaugh received a letter from Kroger informing him of the Data Breach and advising him to take protective measures. Mr. Cavanaugh was recently notified that his personal information had been compromised online on January 17, 2021. His medical and other sensitive personal information was compromised in the Data Breach.

6. Michelle Patraw is a citizen and resident of Rincon, Georgia. She was a Kroger employee from February 2020 to August 2020. On March 18, 2021, Ms. Patraw received a letter from Kroger informing her of the Data Breach and advising her to take protective measures. Since being notified of the Data Breach, Ms. Patraw was called by a debt collector with the University of Nevada, despite never having attended that institution, and purchased LifeLock data protection. Her sensitive personal information, including her Social Security number, was compromised in the Data Breach.

7. Plaintiff Chennetta Schoefield is a citizen and resident of Ridgeway, Virginia. She has filled her prescriptions with Kroger for at least the past two years. On March 12, 2021, Ms. Schoefield received a letter from Kroger informing her of the Data Breach and advising her to take protective measures. Since then Ms. Schoefield has spent additional time monitoring her credit reports and contacting her bank to check for suspicious activity. She also placed a hold on her bank account to prevent fraudulent charges. Ms. Schoefield's medical and other sensitive personal information was compromised in the Data Breach.

8. Plaintiff Tito Torres Jr. is a citizen and resident of Douglasville, Georgia. A former Kroger employee, Mr. Torres received a letter from Kroger, dated February 19, 2021, informing him of the Data Breach and advising him to take protective measures. His sensitive

personal information, including his Social Security number, was compromised in the Data Breach.

9. Defendant The Kroger Company is an Ohio corporation with its principal place of business in Cincinnati.

### III. JURISDICTION AND VENUE

10. This Court has jurisdiction over the lawsuit under the Class Action Fairness Act, 28 U.S.C. § 1332, because this is a proposed class action in which: (1) there are at least 100 class members; (2) the combined claims of class members exceed $5,000,000, exclusive of interest, attorneys' fees, and costs; and (3) Kroger and class members are domiciled in different states.

11. The Court has personal jurisdiction over Kroger because its principal place of business is within this District and it has sufficient minimum contacts in Ohio to render the exercise of jurisdiction by this Court proper and necessary.

12. Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this District.

### IV. FACTUAL ALLEGATIONS

**Employees and Customers Trust Kroger With Their PII**

13. Employees of Kroger must provide a variety of sensitive private details as a condition of their employment. This information includes names, Social Security numbers, contact information, and dates of birth. Kroger also maintains and communicates with its employees about sensitive personal information such as net pay, gross pay, and withholdings.

14. Kroger provides prescription drug services to customers through its pharmacies (the "Kroger Pharmacies").

15. Kroger operates over 2,300 pharmacies as well as 11 specialty pharmacies.

16. Kroger Pharmacies are in grocery stores nationwide, including in Kroger stores themselves. Other retail businesses that house Kroger Pharmacies include Baker's, City Market Food & Pharmacy, Copps, Dillons Food Stores, FredMeyer, Fry's Food Stores, Gerbes Super Markets, Harris Teeter, JayC Food Stores, King Soopers, Mariano's, Metro Market, Owen's, Pay Less Super Markets, Pick 'n Save, QFC Quality Food Centers, Ralphs, and Smith's.

17. To fill prescriptions at a Kroger Pharmacy, customers must provide sensitive private details including their names, home and email addresses, phone numbers, and dates of birth, as well as insurance and medical information that includes prescription number, prescribing doctor, information needed to process insurance claims, medication names and dates, and medical history.

18. Kroger provides medical services to its customers through The Little Clinic, which operates over 215 medical offices in select Kroger, Fry's, JayC, Dillons and King Soopers stores in Ohio, Georgia, Virginia, and other states.

19. The Little Clinic's Patient Bill of Rights and Responsibilities states that Little Clinic patients have the right "[t]o be treated . . . in a manner that protects privacy and confidentiality of personal information."[1] Additionally, in a statement titled "Our Values," The Little Clinic writes, "In accordance with State and Federal law, The Little Clinic respects the privacy and diversity of all people."[2]

---

[1] https://www.thelittleclinic.com/topic/patient-bill-of-rights-and-responsibilities (last visited May 4, 2021).
[2] https://www.thelittleclinic.com/about-us (last visited May 4, 2021).

20. Kroger's pharmacies and clinics serve over 13 million customers across the United States. Kroger creates electronic health records for its customers, and those records include sensitive personal and medical information.

21. Kroger also provides financial services to its customers, including the ability to cash checks, send money, and pay bills.

22. Plaintiffs and Class members reasonably expected that Kroger would keep their PII confidential and would not make unauthorized disclosures of this information.

23. Plaintiffs and Class members relied upon Kroger to securely maintain their PII and to adopt and maintain security measures that would prevent involuntary disclosure. But Kroger did not implement reasonable cybersecurity measures and failed to take appropriate steps to protect and secure the personal and medical information provided to it by employees and customers.

**Kroger's Files Are Breached by Cyber Criminals**

24. On February 19, 2021, Kroger began informing affected customers, employees, and former employees of the Data Breach.

25. Kroger announced that it used an Accellion file transfer service for "third-party secure file transfers" and that an "unauthorized person gained access to certain Kroger files by exploiting a vulnerability in Accellion's file transfer service."[3]

26. According to Accellion, the electronic intrusion occurred on a service called Accellion FTA. Accellion described this FTA platform as a "20 year old product nearing end-of

---

[3] https://www.kroger.com/i/accellion-incident (last visited May 4, 2021).

6

life" and stated it had "encouraged all FTA customers to migrate to kiteworks." Accellion also stated its intent to "accelerate[] our FTA end-of-life plans in light of these attacks."[4]

27. Accellion FTA runs on an operating system called CentOS-6, which reached end-of-life status on November 30, 2020. CentOs-6 stopped receiving full updates on May 10, 2017, and stopped receiving maintenance updates on November 30, 2020.

28. For three years leading up to the Data Breach, Accellion encouraged its customers, including Kroger, to upgrade from the Accellion FTA platform. Kroger failed to do so.

29. Although Accellion represented that its "customers were promptly notified of the attack on December 23, 2020," Kroger claimed it was not informed until January 23, 2021.

30. Kroger has confirmed that the Data Breach compromised employee human resources data, pharmacy records, and financial services records.

31. Employees and former employees have received notification letters informing them that PII stolen in the Data Breach includes names, personal contact details, birthdates, Social Security numbers, and salary information such as net and gross pay and withholding allowances.

32. Kroger clinic and pharmacy customers received letters informing them that PII stolen in the Data Breach includes names, personal contact details, birthdates, medical histories, information to process insurance claims, and prescription information such as prescription number, prescribing doctor, and medication names and dates, as well as certain clinical services such as whether the customer ordered an influenza test.

---

[4] https://www.accellion.com/company/press-releases/accellion-provides-update-to-recent-fta-security-incident/ (last visited Apr. 27, 2021).

33. Kroger's Data Breach notification letters advise the affected persons to take protective measures, such as reviewing accounts, signing up for credit monitoring, placing fraud alerts, and requesting a credit freeze.

34. Kroger knew of the importance of safeguarding the PII of its customers and employees. Over the past several years, data breaches like the incursion into Kroger's electronic systems have occurred and have been reported on in the news.

35. PII, particularly Social Security numbers and medical information, is valuable to criminals. This information can be and has been sold and traded on the dark web black market.

36. The loss of a Social Security number is particularly troubling because it cannot easily be changed and can be misused in a range of nefarious activities, such as filing fraudulent tax returns to steal tax refund payments, opening new accounts to take out loans, and other forms of identity theft.

37. Information compromised in the Accellion attack has already been misused in attempts to extort money from breach victims.

38. As stated above, Plaintiffs have already experienced a variety of fraudulent activities and identity theft following the breach.

**Accellion FTA Had Foreseeable Vulnerabilities**

39. In mid-December 2020, Accellion learned of two security vulnerabilities in its Accellion FTA software, a product that specializes in large file transfers. In technical terms, the vulnerabilities were described as SQL Injection (CVE-2021-27101) and OS Command Execution (CVE-2021-27104).

40. Approximately four days after learning of these vulnerabilities, Accellion released a software patch to remediate the problem, followed by another patch three days later.

41. In mid-January 2021, Accellion learned of two more security vulnerabilities in its Accellion FTA software. These vulnerabilities were described as Server-Side Request Forgery (CVE-2021-27103) and OS Command Execution (CVE-2021-27102).

42. After learning of these additional vulnerabilities, Accellion issued a critical security alert on January 22 advising FTA customers—including Kroger—to shut down their FTA systems immediately.

43. Approximately three days after learning of the January vulnerabilities, Accellion released a patch to remediate the problem. Three days later, Accellion released another patch to increase the frequency of security anomaly detection.

44. As a result of these vulnerabilities, Accellion FTA was the subject of a cyberattack that continued into January 2021. Unauthorized third parties gained access to large amounts of PII and other data stored on or being transferred through Accellion FTA.

45. The cybersecurity firm Mandiant described the Accellion vulnerabilities as being "of critical severity because they were subject to exploitation via unauthenticated remote code execution."[5]

46. On February 28, Mandiant's review also identified two additional vulnerabilities, of "medium" to "high severity."

47. Mandiant attributed the attack to two separate threat groups: one (UNC2546) responsible for compromising the system, and the other (UNC2582) believed to be responsible for engaging in extortionate activity using some of the acquired personal information.

---

[5] https://www.accellion.com/sites/default/files/trust-center/accellion-fta-attack-mandiant-report-full.pdf (last visited Apr. 26, 2021).

9

## V. CLASS ACTION ALLEGATIONS

48. Plaintiffs bring this lawsuit as a class action on their own behalf and on behalf of all other persons similarly situated, pursuant to Federal Rules of Civil Procedure 23(a), (b)(2), (b)(3), and/or (c)(4). This action satisfies the numerosity, commonality, typicality, adequacy of representation, predominance, and superiority requirements of Rule 23. The Class is defined as:

> All Kroger employees (current or former), pharmacy customers, patients of the Little Clinic, and other Kroger customers whose PII was exposed in the Data Breach.

Plaintiffs reserve the right to modify, change, or expand the Class definition, including proposing additional subclasses, based on discovery and further investigation.

### Numerosity and Ascertainability

49. The number of Class members is so large as to make joinder impracticable. Kroger reported that the Data Breach affected approximately 2% of its customers. Kroger's pharmacies and clinics alone serve over 13 million customers, and this number does not include all of Kroger's customers, such as customers who used Kroger's financial services. The Data Breach also affected current and former employees of Kroger.

50. The identities and contact information of Class members are readily ascertainable from information and records in the possession, custody, or control of Kroger. Notice of this action can be readily provided to the Class.

### Typicality

51. Plaintiffs' claims are typical of the claims of the Class in that the sensitive personal information of the representative Plaintiffs, like that of all Class members, was compromised in the Data Breach.

### Adequacy of Representation

52. Plaintiffs are members of the proposed Class and will fairly and adequately represent and protect its interests. Plaintiffs' counsel are competent and experienced in class action and privacy litigation and will pursue this action vigorously. Plaintiffs have no interests contrary to or in conflict with the interests of Class members.

### Predominance of Common Issues

53. Common questions of law and fact exist as to all members of the Class and predominate over any questions pertaining only to individual Class members. Among the questions of law and fact common to the Class are:

   a. Whether Kroger had a duty to implement reasonable cyber security measures to protect Plaintiffs' and Class members' sensitive, personal information and to promptly alert them if such information was compromised;

   b. Whether Kroger breached its duties by failing to take reasonable precautions to protect Plaintiffs' and Class members' sensitive, personal information;

   c. Whether Kroger acted negligently by failing to implement adequate data security protocols and otherwise act to secure the sensitive, personal information entrusted to it;

   d. Whether Kroger unlawfully invaded Plaintiffs' and Class members' privacy by recklessly allowing the Data Breach to occur through its inaction;

   e. What relief is warranted for Plaintiffs and the Class under the circumstances; and

   f. The appropriate measure of damages for the breach victims.

### Superiority

54. A class action is superior to all other available methods for resolving this controversy. Absent a class action, most Class members would likely find the cost of pursuing their claims prohibitively high and would have no effective remedy. Because of the relatively small size of the individual Class members' claims, few, if any, Class members would seek redress for Kroger's violations.

55. Classwide adjudication of common questions of law and fact will conserve the resources of the courts and promote efficiency and consistent results.

### Generally Applicable Conduct

56. Classwide injunctive and corresponding declaratory relief is appropriate under Rule 23(b)(2), as Kroger acted and failed to act in a manner that applies generally to the Class.

### FIRST CAUSE OF ACTION

### Negligence

57. Plaintiffs incorporate the above allegations as if fully set forth herein.

58. Kroger collected, stored, and transferred the personal information of Plaintiffs and Class members, including their names, Social Security numbers, email addresses, phone numbers, home addresses, dates of birth, information to process insurance claims, prescription information such as prescription number, prescribing doctor, medication names and dates, medical history, and salary information such as net pay and gross pay and withholdings.

59. Kroger owed Plaintiffs and Class members a duty of reasonable care to preserve and protect the confidentiality of their personal information that it collected. This duty included, among other obligations, maintaining and testing its security systems and computer networks and the security systems and computer networks of its vendors, using up-to-date and secure

versions of file transfer software, and taking other reasonable security measures to safeguard and adequately secure the personal information of Plaintiffs and Class members from unauthorized access and use.

60. Plaintiffs and Class members were the foreseeable victims of Kroger's inadequate cybersecurity. The natural and probable consequence of Kroger's failing to adequately secure its information networks was the hacking of Plaintiffs' and Class members' personal information.

61. Kroger knew or should have known that Plaintiffs' and Class members' personal information was an attractive target for cyber thieves, particularly in light of data breaches experienced by other entities. The harm to Plaintiffs and Class members from exposure of their highly confidential personal facts was reasonably foreseeable to Kroger.

62. Kroger had the ability to sufficiently guard against data breaches by implementing adequate measures to protect its systems, such as by removing the legacy Accellion FTA software and upgrading to a state-of-the-art, current file transfer software.

63. Kroger breached its duty to exercise reasonable care in protecting Plaintiffs' and Class members' highly confidential personal information by failing to implement and maintain adequate security measures to safeguard the information, failing to monitor its systems and files to identify suspicious activity, and allowing unauthorized access to and exfiltration of the information.

64. There is a close connection between Kroger's failure to employ reasonable security protections for its customers' and employees' personal information and the injuries suffered by Plaintiffs and Class members. When individuals' sensitive personal information is stolen, they face a heightened risk of identity theft and may need to: (1) purchase identity

protection, monitoring, and recovery services; (2) flag asset, credit, and tax accounts for fraud, including by reporting the theft of their social security numbers to financial institutions, credit agencies, and the IRS; (3) purchase or otherwise obtain credit reports; (4) monitor credit, financial, utility, explanation of benefits, and other account statements on a monthly basis for unrecognized credit inquiries and charges; (5) place and renew credit fraud alerts on a quarterly basis; (6) contest fraudulent charges and other forms of identity theft; (7) repair damage to credit and financial accounts; and (8) take other steps to protect themselves and attempt to avoid or recover from identity theft and fraud.

65. Kroger also owed a duty to timely disclose to Plaintiffs and Class members that their personal information had been or was reasonably believed to have been compromised. Timely disclosure was necessary so that Plaintiffs and Class members could, among other things: (1) purchase identity protection, monitoring, and recovery services; (2) flag asset, credit, and tax accounts for fraud, including by reporting the theft of their Social Security numbers to financial institutions, credit agencies, and the IRS; (3) purchase or otherwise obtain credit reports; (4) place or renew fraud alerts on a quarterly basis; (5) intensively monitor loan data and public records; and (6) take other steps to protect themselves and attempt to avoid or recover from identity theft.

66. Kroger breached its duty to timely disclose the Data Breach to Plaintiffs and Class members. After learning of the Data Breach, Kroger unreasonably delayed in notifying Plaintiffs and Class members of the Data Breach. That delay caused foreseeable harm to Plaintiffs and Class members by preventing them from taking timely self-protection measures in response to the Data Breach.

67. The policy of preventing future harm strongly disfavors application of the economic loss rule, particularly given the extremely sensitive data entrusted to Kroger. Kroger had an independent duty in tort to protect this data and thereby avoid reasonably foreseeable harm to Plaintiffs and class members.

68. As a result of Kroger's negligence, Plaintiffs and Class members have suffered damages in an amount to be determined at trial. These damages include or may include, without limitation: (1) loss of the opportunity to control how their personal information is used; (2) diminution in the value and use of their personal information entrusted to Kroger; (3) out-of-pocket costs associated with the prevention, detection, and recovery from identity theft and unauthorized use of financial accounts; (4) costs associated with the ability to use credit and assets frozen or flagged due to credit misuse, including increased costs to use credit, credit scores, credit reports, and assets; (5) unauthorized use of compromised personal information to open new financial and other accounts; (6) continued risk to their personal information, which remains in Kroger's possession and is subject to further exposure for as long as Kroger fails to undertake appropriate and adequate measures to protect the personal information in its possession; and (7) future costs in the form of time, effort, and money they will expend to prevent, detect, contest, and repair the adverse effects of their personal information being stolen in the Data Breach.

## SECOND CAUSE OF ACTION

### Invasion of Privacy

69. Plaintiffs incorporate the above allegations as if fully set forth herein.

70. Kroger wrongfully intruded upon Plaintiffs' and Class members' seclusion. Plaintiffs' and Class members reasonably expected that the personal information they entrusted

15

to Kroger—such as their names, Social Security numbers, email addresses, phone numbers, home addresses, dates of birth, information to process insurance claims, prescription information, medical history, and salary information—would be kept private and secure, and would not be disclosed to any unauthorized third party or for any improper purpose.

71. Kroger unlawfully invaded Plaintiffs' and Class members' privacy rights by:

   a. failing to adequately secure their personal information from disclosure to unauthorized third parties or for improper purposes;

   b. enabling the disclosure of personal and sensitive facts about them in a manner highly offensive to a reasonable person; and

   c. enabling the disclosure of personal and sensitive facts about them without their informed, voluntary, affirmative, and clear consent.

72. A reasonable person would find it highly offensive that Kroger, having received, collected, and stored Plaintiffs' and Class members' Social Security numbers, names, birthdates, medical and financial information, and other personal details, failed to protect that information from unauthorized disclosure to third parties.

73. In failing to adequately protect Plaintiffs' and Class members' personal information, Kroger acted knowingly and in reckless disregard of their privacy rights. Kroger was aware of the security vulnerabilities in Accellion's legacy FTA system but failed to upgrade to a more secure file transfer system or ensure that Accellion patched the vulnerabilities. Kroger also knew or should have known that its ineffective security measures, and their foreseeable consequences, are highly offensive to a reasonable person in Plaintiffs' position.

74. Kroger violated Plaintiffs' and Class members' common law right of privacy, which includes the right to control their personal and private information.

16

75. Kroger's unlawful invasions of privacy damaged Plaintiffs and Class members. As a direct and proximate result of these violations, Plaintiffs and Class members suffered mental distress, and their reasonable expectations of privacy were frustrated and defeated.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for an order:

A. certifying this case as a class action, appointing Plaintiffs as Class representatives, and appointing Plaintiffs' counsel to represent the Class;

B. entering judgment for Plaintiffs and the Class;

C. awarding Plaintiffs and Class members monetary relief;

D. ordering appropriate injunctive relief;

E. awarding pre- and post-judgment interest as prescribed by law;

F. awarding reasonable attorneys' fees and costs as permitted by law;

G. granting such further and other relief as may be just and proper.

## JURY TRIAL DEMANDED

Plaintiffs hereby demand a trial by jury on all issues so triable.

Dated: May 13, 2021         Respectfully submitted,

By: /s/ *Daniel R. Karon*
Daniel R. Karon (0069304)
Beau D. Hollowell (0080704)
**Karon LLC**
700 West St. Clair Avenue, Suite 200
Cleveland, Ohio 44113
(216) 622-1851
dkaron@karonllc.com
bhollowell@karonllc.com

Daniel C. Girard (*pro hac vice* application forthcoming)
Jordan Elias (*pro hac vice* application forthcoming)
Adam E. Polk (*pro hac vice* application forthcoming)
Simon Grille (*pro hac vice* application forthcoming)
**GIRARD SHARP LLP**
601 California Street, Suite 1400
San Francisco, California 94108
Telephone: (415) 981-4800
Facsimile: (415) 981-4846
Email: dgirard@girardsharp.com
Email: jelias@girardsharp.com
Email: apolk@girardsharp.com
Email: sgrille@girardsharp.com

*Attorneys for Plaintiffs and the Proposed Class*